IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-02505-WDM-MEH

KAREN DUDNIKOV and
MICHAEL MEADORS,

      Plaintiffs,

v.

CHALK & VERMILION FINE ARTS, INC., and
SEVENARTS, LTD.,

      Defendants.

---

## RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS

---

**Entered by Michael E. Hegarty, United States Magistrate Judge.**

      Before the Court is Defendants' Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue [Docket #4]. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. COLO. L.Civ.R 72.1.C, the matter has been referred to this Court for recommendation. The matter is fully briefed, and oral argument would not materially assist the Court in its adjudication. For the reasons set forth below, the Court recommends that Defendants' Motion to Dismiss be **denied**.

## I.    Introduction

      Plaintiffs filed a declaratory judgment action asserting that their actions in selling their product on eBay do not infringe upon the copyrights of Defendant SevenArts, LTD.[1] Defendants filed the instant Motion to Dismiss arguing that no personal jurisdiction, either generally or specifically, exists over Defendants in the State of Colorado, and that venue is, therefore, improper in the District of

---

[1] The Court construes Plaintiffs' *pro se* pleadings liberally. *Ledbetter v. City of Topeka, Kan.*, 318 F.3d 1183, 1187 (10th Cir. 2003).

Colorado.

II.    **Facts**[2]

Plaintiffs manufacture and/or purchase, and sell or resell, various collectibles, fabric, and hand-made fabric crafts, such as aprons, blankets, pot holders, fabric, and place mats under the business name Tabber's Creations.  The fabric used by Plaintiffs, either in making these items or in reselling the raw fabric, often contains copyrighted designs.  Plaintiffs sell their products on eBay under the username "tabberone."  Due to Plaintiffs' high volume of sales on eBay, they are listed as "power sellers."  They have received over 6,000 feedback messages in the past year and over 13,000 positive feedback messages since 1998.  Not surprisingly, Plaintiffs claim that substantially all of their business income is derived from sales on eBay.  Each item listing includes the location of the item, Hartsel, Colorado.  Plaintiffs' username on eBay links to a page about the seller that links to Plaintiffs' website, www.tabberone.com.  The first page of Plaintiffs' website states that all Colorado residents must pay sales tax and includes the contact information for Plaintiff Karen Dudnikov in Hartsel, Colorado.

Defendant SevenArts, LTD is a British company and the copyright owner of certain designs by the artist Erte.  The instant action concerns a dress designed by Erte.  Cartoon character Betty Boop has been depicted wearing dresses that Defendants allege infringe on Erte's copyrighted designs.  Plaintiffs purchased fabric, manufactured by a third party, which contains these depictions of Betty Boop in the allegedly infringing dresses.  Plaintiffs then listed this fabric for sale on eBay.

---

[2]These facts were obtained primarily from Plaintiffs' Complaint.  Some of the information, which is not material to the Court's decision, was taken from eBay's internet web page.  All well-pleaded factual allegations must be taken as true and viewed in the light most favorable to the non-moving party.  *Nelson v. State Farm Mut. Auto. Ins. Co.*, 419 F.3d 1117, 1119 (10th Cir. 2005).

Defendants argue that Plaintiffs have therefore sold products that infringe copyrights owned by SevenArts.

Defendant Chalk & Vermilion Fine Arts, Inc. ("Chalk & Vermilion"), is the agent of SevenArts in the United States and is responsible for enforcing the copyrights owned by Defendant SevenArts. The instant controversy arose when Chalk & Vermilion stopped Plaintiffs' sale on eBay of the allegedly infringing Betty Boop design.

Pursuant to the requirements of the Digital Millennium Copyright Act ("DMCA") 17 U.S.C. § 512 *et seq.*, eBay has implemented its Verified Rights Owner ("VeRO") Program whereby a copyright owner may inform eBay of an infringing item that is listed on eBay. Under VeRO, a copyright owner may submit a Notice of Claimed Infringement ("NOCI") to eBay. The copyright owner, or its authorized agent, must state under penalty of perjury that it has a good faith belief that a listing on eBay infringes its copyright or trademark. After receiving the NOCI, eBay will "take down" the listing from its website and notify the seller of its removal.

Once the listing is removed from eBay, the seller may challenge the takedown by contacting the copyright owner and filing a Counter Notice with eBay contesting the takedown. If the copyright owner does not respond to the Counter Notice, the seller may re-list the item. However, the copyright owner may continue to have the listing removed each time the item is re-listed. In fact, Defendant Chalk & Vermilion allegedly threatened to take down any future listings by Plaintiffs of the allegedly infringing item. eBay considers a takedown to be a black mark against the seller. eBay records all NOCIs that are submitted against a seller, and repeated take downs could result in the seller's account being permanently suspended. Thus, Plaintiffs claim that they are damaged by Defendants filing a NOCI in the following manner: (1) loss of revenue from the takedown of an

3

allegedly legitimate listing; and (2) the accumulation of black marks against them as a seller that could result in their business being banned from eBay.

In this case, Defendant Chalk & Vermilion, as the agent of Defendant SevenArts, filed a NOCI with eBay regarding Plaintiffs' sale of the allegedly infringing Betty Boop fabric, which resulted in this listing being taken down from eBay. Plaintiffs contested the take down and contacted Defendant Chalk & Vermilion directly via email. Based on Defendant Chalk & Vermillion's refusal to remove the NOCI, Plaintiffs filed this declaratory judgment action to establish whether this sale, and future sales of this fabric, infringed on Defendant SevenArt's copyright.

After Plaintiffs filed this declaratory judgment action, Defendants filed a Motion to Dismiss based on lack of personal jurisdiction, both generally and specifically, over the Defendants. Defendants argue that neither Defendant has any contacts with the State of Colorado, that they directed no activities toward Colorado, that this lawsuit does not relate to any of the Defendants' activities, and that any action in this state was initiated by Plaintiffs. In response, Plaintiffs contend that Defendants' actions were purposefully directed at Plaintiffs who Defendants knew, or reasonably should have known, were residents of Colorado, that Defendants knew that submitting a NOCI to eBay would injure a seller in Colorado, and that Defendant Chalk & Vermillion's website is sufficiently active under the *Zippo* analysis to support general jurisdiction in Colorado.

## III.    Discussion

### A.    Legal Standard for Motion to Dismiss based on Personal Jurisdiction

To withstand a Motion to Dismiss based on lack of personal jurisdiction, Plaintiffs need only establish a *prima facie* case of personal jurisdiction based on a preponderance of the evidence. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). In determining whether Plaintiffs have

established a *prima facie* case of personal jurisdiction over Defendants, the Court must resolve all factual disputes and construe all reasonable factual inferences in favor of the Plaintiffs. *Id.*

As a court of limited jurisdiction, this Court may only exercise jurisdiction over the non-resident Defendants if (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction over the Defendants in Colorado comports with the Due Process Clause of the United States Constitution. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187 (Colo. 2005). Thus, a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute.

Due process first requires that the defendant have "minimum contacts" with the forum state. *International Shoe Co. v. Washington*, 326 U.S. 310 316 (1945).[3] Such a requirement protects a defendant from "being subject to the binding judgment of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted). The defendant must have "fair warning that a particular activity may subject [him] to jurisdiction." *Id.* Thus, a defendant can "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Minimum contacts may be established either generally or specifically:

Depending on the level of contact, personal jurisdiction may be either specific, in

---

[3] Minimum contacts for SevenArts are analyzed based on the conduct of Chalk & Vermilion because contacts may be based on "activities carried on in its behalf by those who are authorized to act for it." *Int'l Shoe Co.*, 325 U.S. at 316.

which case personal jurisdiction is based on specific activities or contacts the defendant has with the forum state, or it may be general, in which case jurisdiction is based upon "continuous or systematic contacts" between the defendant and the forum state. Under either theory of jurisdiction, the defendant's contacts must be substantial enough so that exercising personal jurisdiction "does not offend traditional notions of fair play and substantial justice."

*United States v. Botefuhr*, 309 F.3d 1263, 1271-72 (10th Cir. 2002) (citations omitted). Because Plaintiffs allege both general and specific jurisdiction, the Court will analyze each under the appropriate standard.

**B.      General Jurisdiction**

Plaintiffs argue that Defendants are subject to general jurisdiction in Colorado based on the operation of Defendant Chalk & Vermillion's website. Specifically, Plaintiffs contend that, through Defendants' website, they were invited to submit their contact information and ask questions. Plaintiffs allege that a friend sought information through this website pretending to be located in Wisconsin. Defendant Chalk & Vermillion responded to the request for information and appeared willing to establish a business relationship with Plaintiffs' friend, allegedly in Wisconsin. Plaintiffs argue that this establishes a willingness by the Defendants to create a business relationship in any state based on contacts through their website. In turn, Defendants first point out that they maintain no contacts with the State of Colorado, aside from their website, which can be accessed in Colorado. In addition, the contact alleged by Plaintiffs was with a prospective purchaser in Wisconsin, not Colorado, and Plaintiffs, through their agent, initiated the contact. Moreover, Defendants argue that only existing customers can transact business through its website.

General jurisdiction, which allows the Court to exercise jurisdiction over a defendant for any claim, requires the defendant to have continuous and substantial connection to the forum state.

6

*International Shoe Co.*, 326 U.S. at 320.   A defendant's website can constitute a substantial connection depending on whether the website is passive or active.   *See Soma Med. International v. Standard Chtd. Bank*, 196 F.3d 1292, 1296-97 (10th Cir. 1999).   The Tenth Circuit has cited with approval the sliding scale set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), for evaluating whether a website is sufficiently active to constitute a substantial connection.   On one end of the spectrum is the passive website which merely provides information about the defendant.   On the other end is the active website whereby a defendant enters transactions over the internet and encourages the active and repeated transmission of information through its website.   Upon this spectrum, a defendant's website should be evaluated such that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet."   *Id.* at 1124.

Here, Defendant Chalk & Vermillion's website falls in the middle of this spectrum.   A visitor can initiate contact with Chalk & Vermillion through the website but cannot conduct business.   Only registered customers, those with whom Chalk & Vermillion has a previous business relationship, conduct transactions through the website.   Plaintiffs' ability to use Defendant's website is limited to that of a visitor, one who can only initiate contact but not conduct business.   Such limited use is consistent with a passive website and cannot subject Defendant to general jurisdiction.   *See Scherer v. Curators of the Univ. of Mo.*, 152 F. Supp. 2d 1278, 1284 (D. Kan. 2001) (holding that "a passive Web site that does little more than make information available to those who are interested . . . is insufficient to subject a non-resident defendant to general jurisdiction) (quotations and citations omitted).   Thus, the Court finds that Defendant Chalk & Vermilion's website does not constitute a substantial connection to the State of Colorado for visitors of the website.

Plaintiff also sets forth a number of arguments that are premised solely on contact initiated by themselves to indicate that Defendants are accessible from Colorado.  However, "[u]nilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 417 (1984).  For this reason, Plaintiffs' ability to locate Defendants through a search engine or to bait Defendant Chalk & Vermilion into communicating with a friend allegedly in Wisconsin does not establish a substantial connection between Defendants and the State of Colorado.  Plaintiffs must show more than just a willingness by Defendants to consider a business relationship in any state.  They must establish a continuing substantial contact with the State of Colorado, which plaintiffs fail to do.  The Court, therefore, concludes that general jurisdiction does not exist over Defendants in the State of Colorado.

### C.    Specific Jurisdiction

Plaintiffs argue that Defendants' action in taking down their eBay auction was purposefully directed toward the State of Colorado in that (1) Defendants knew the harm that would result from their actions; and (2) Defendants knew that Plaintiffs were residents of the State of Colorado. Specifically, Plaintiffs contend that Defendants were aware that eBay's VeRO program allowed them to take down Plaintiffs' listing.  Defendants knew that eBay maintains a record of these take downs and that repeat infringers could be suspended from eBay.  Morever, Defendants knew that Plaintiffs conduct a substantial amount of business on eBay and that their business is located in Hartsel, Colorado.

In response, Defendants argue that the underlying action in this case is Plaintiffs' sale of infringing material, not their submission of an NOCI.  In addition, the take down resulted from its

communication with eBay, not Plaintiffs.  The take down, and any future suspension, are actions that were or will be undertaken by eBay, not Defendants.  All contact with Plaintiffs was initiated by Plaintiffs and, even then, was for the purpose of notifying Plaintiffs that they were listing material that infringed on Defendant SevenArt's copyright in Erte's designs.  Moreover, Defendants argue that Plaintiffs do not and cannot allege that Defendants actually read the statement on the listing indicating that Plaintiffs were located in Colorado.

Specific jurisdiction, which allows the Court to exercise jurisdiction over a defendant only for the claims at issue, requires the defendant to have "purposefully directed" his activities toward the forum state.  *Kuenzle v. HTM Sport-Und Freizeitgerte AG*, 102 F.3d 453, 456 (10th Cir. 1996).  The claims at issue must also "arise out of or relate to the defendant's contacts with the forum."  *Id.* Nonetheless, "even a single purposeful contact may be sufficient to meet the minimum contact standard when the underlying proceeding is directly related to that contact."  *SEC v. Knowles*, 87 F.3d 413, 419 (10th Cir. 1996).   While some courts have concluded that a typical eBay sales transaction does not establish sufficient minimum contacts, these courts have also recognized the potential for minimum contacts if other factors are present.  *See Action Tapes, Inc. v. Ebert*, No. 05-1239, 2006 U.S. Dist. LEXIS 4958 (N.D. Tex. Feb. 9, 2006) (citing cases).  It appears that no Court has yet addressed whether the submission of a NOCI, and the accompanying take down of a seller's auction listing, presents sufficient additional factors to establish minimum contacts.

To determine whether Defendants' activities were directed to the forum state, the Court must first consider what underlying actions give rise to this lawsuit.  Defendants focus on Plaintiffs' alleged infringement; whereas Plaintiffs focus on Defendants' submission of a NOCI to eBay and subsequent contacts with Plaintiffs.  Because only Defendants' activities can subject Defendants to this Court's

jurisdiction, the Court must consider the following: (1) Does Defendants' submission of a NOCI constitute an underlying action of this lawsuit? (2) If so, is this action expressly aimed at the State of Colorado? (3) If so, does jurisdiction over Defendants based on this activity comport with notions of fair play and substantial justice?

> *(1) Does Defendants' submission of a NOCI constitute an underlying action of this lawsuit?*

The submission of a NOCI to eBay produced two results: (1) Defendant Chalk & Vermillion obtained the protection of SevenArt's copyright against allegedly infringing material; and (2) Plaintiffs received a black mark from eBay as a seller of infringing materials.  Defendants argue that this action has no relation to a declaratory judgment action because "steps taken by a copyright holder to protect itself do not subject the copyright holder to personal jurisdiction." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998); *see also Wise v. Lindamood*, 89 F. Supp. 2d 1187, 1189 (D. Colo. 1999).  Plaintiffs distinguish these cases on the basis that the plaintiffs in these cases filed declaratory judgment actions after receiving only cease and desist letters.  Plaintiffs argue that Defendants took direct action against Plaintiffs that harmed Plaintiffs' business by filing a NOCI with eBay, which stopped Plaintiffs' sale of the fabric at issue.        The Court agrees with Plaintiffs' distinction.  While Defendants' actions were undertaken to protect SevenArts' copyright, their actions went beyond simple notification and constituted an affirmative action against Plaintiffs' business that resulted in harm to Plaintiffs.  In *Wise*, Chief Judge Lewis T. Babcock pointed out that allowing cease and desist letters to serve as the basis for jurisdiction "would decrease the likelihood of settlements in cases of alleged infringement because the party that believes its exclusive trademark, copyright, or patent is being infringed will not first seek to settle a dispute through less adversarial channels than

the court system." *Wise*, 89 F. Supp. 2d at 1191.  In this case, no such incentive exists.  Under eBay's VeRO Program, a copyright owner could prevent a seller from listing any allegedly infringing products and, through repeated take downs, could potentially have the seller suspended from eBay, without ever seeking an adjudication on the merits of the alleged infringement.

In fact, Defendants in this case did not send a notification of infringement to Plaintiffs intending to encourage settlement.  Rather, Defendants notified a third party, eBay, knowing that this action would directly harm Plaintiffs' business through the take down of the listing and the black mark against Plaintiffs' business on eBay.  In essence, Defendants went beyond simply informing Plaintiffs that they should cease and desist from any alleged infringement and effectively precluded Plaintiffs from selling these items.  Whether Defendants were justified in harming Plaintiffs' business by taking down this listing, and would be justified in stopping future listings, can be resolved by this declaratory judgment action.  Based on the harm caused by Defendants' actions, the Court believes that Defendants' action in sending a NOCI to eBay constitutes an underlying action of this lawsuit.

*(2) Was Defendants' action expressly aimed at the State of Colorado?*

Defendants argue that its action was aimed at eBay, not Plaintiffs; thus, their actions occurred outside the State of Colorado and were not expressly aimed at Plaintiffs in Colorado.  Defendants further contend that they had no knowledge or intent to cause harm in the State of Colorado.  As Defendants point out, "the mere foreseeability of causing injury in another state" does not support specific jurisdiction.  *Calder v. Jones*, 465 U.S. 783, 789 (1984).  Plaintiffs argue that Defendants' action rises above mere foreseeability and are, instead, expressly aimed at Plaintiffs.  Defendants knew that their actions would have an effect in the State of Colorado and should, therefore, "reasonably anticipate being haled into court there."  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

11

Taking Plaintiffs' well-pled allegations as true and resolving all factual inferences in favor of the non-moving party requires the Court accept as true the fact that Defendants knew Plaintiffs' business was located in Colorado.  These allegations are not merely conclusory, because eBay's listing of the allegedly infringing item stated that the item was located in Hartsel, Colorado.  Even if Defendants did not follow the link to Plaintiffs' website, they knew from the same page that listed the allegedly infringing item that the item was being sold in Hartsel, Colorado.  Based on this information, the Court can only conclude that Defendants intended to stop a sale from occurring in Hartsel, Colorado.  Thus, Defendants' actions were not aimed at eBay to simply inform eBay of the alleged infringement, but rather, were aimed at Plaintiffs to preclude the sale of an allegedly infringing item.  Under the "effects" test in *Calder*, Defendants knew that the primary effect of their action would be felt in Colorado.  *See Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (finding that the defendant's letter to a non-resident domain name company challenging a California resident's use of a domain name was expressly aimed at California because the effects of the letter were primarily felt in California).

Moreover, to allow Defendants to employ eBay's VeRO program as a means to knowingly harm Plaintiffs' business without subjecting Defendants to jurisdiction for these actions where the harm occurred would ignore the intentional and apparent consequences of Defendants' action.  As the Supreme Court concluded in *Calder*, "An individual injured in [Colorado] need not go to [Connecticut] to seek redress from persons who, though remaining in [Connecticut], knowingly cause the injury in [Colorado]."  465 U.S. at 790.  Hence, the Court believes that Defendants' action in sending a NOCI to eBay satisfies the minimum contacts required for a finding of specific jurisdiction because this lawsuit would redress the harm caused by Defendants' action and Defendants' action

was expressly aimed at stopping a sale in Hartsel, Colorado.

>    *(3) Does jurisdiction over Defendants based on this activity comport with notions of fair play and substantial justice?*

Once Plaintiffs have established that Defendants's action constitutes a sufficient minimum contact with the State of Colorado, Plaintiffs must also establish that haling Defendants into court in the State of Colorado is consistent with notion of fair play and substantial justice. *Pro Axess, Inc. v. Orlux Distrib.*, 428 F.3d 1270, 1279 (10th Cir. 2005). To that end, the Court must consider the following factors:

>    (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several state in furthering fundamental social policies.

*OMI Holdings v. Royal Ins. Co. Of Can.*, 149 F.3d 1086, 1095 (10th Cir. 1998) (citing *Asahi Metal Industry Co. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987)).

Here, Defendants are burdened in that their only relevant connection to the State of Colorado is their decision to stop the sale of an allegedly infringing item in Colorado. Nevertheless, the forum state has significant interest in protecting the business interests of its citizens and providing a forum for the same. Thus, as long as Defendants have sufficient minimum contacts, which the Court concludes they do, notions of fair play are not offended by exercising jurisdiction in the forum in which the harm occurred. *See Bancroft & Masters, Inc.*, 223 F.3d 1082.

A copyright owner using eBay's VeRO program has notice of where the allegedly infringing item is located before he stops the sale. He can do more than simply notify the seller of alleged infringement – he has the ability to have the listing removed from eBay and the seller marked as selling infringing items. Before undertaking any action to interfere with a sale, the copyright owner

knows, by the location of the item, in which forum he is ending a sale.  In this case, Defendants knew before submitting a NOCI to eBay that this listing was in Hartsel, Colorado, and that their actions would harm a seller in Hartsel, Colorado.  They also knew, or reasonably should have known, that "tabberone," Plaintiffs' seller name, was listed as a "power seller," had over 5,000 current listings, and had received over 13,000 positive feedback messages in the past.  Knowing the volume of Plaintiffs' business on eBay, the harm caused by the black mark from a NOCI, and the location of Plaintiffs' business in Hartsel, Colorado, Defendants must reasonably anticipate being haled into court in the State of Colorado.  *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

  **D.**  **Proper Venue**

  Defendants argue that venue is improper in the State of Colorado because they are not subject to personal jurisdiction in this state.  Based on the Court's conclusion that specific personal jurisdiction exists over Defendants in this case, the Court also finds that venue is proper.  *See North American Phillips Corp. v. American Vending Sales*, 35 F.3d 1576, 1577 n.1 (Fed. Cir. 1996).

**IV.**  **Conclusion**

  Accordingly, for the reasons stated above, the Court RECOMMENDS that Defendants' Motion to Dismiss Complaint for Lack of Personal Jurisdiction and Improper Venue [Filed February 9, 2006; Docket #4] be **denied**.  Plaintiffs have established *prima facie* proof of specific jurisdiction in that Defendants knew that their actions would result in harm directly to Plaintiff's business in the State of Colorado and intended this harm to occur.  Under Fed. R. Civ. P 72, the parties shall have ten (10) days after service of this Recommendation to serve and file any written objections in order

to obtain reconsideration by the District Judge to whom this case is assigned.[4]

Dated at Denver, Colorado this 15th day of May, 2006.

BY THE COURT:


 s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge

---

[4] The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a *de novo* determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy of this Recommendation may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *Niehaus v. Kansas Bar Ass'n*, 793 F.2d 1159, 1164 (10th Cir. 1986).